**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **Malikie Innovations Ltd. and Key Patent Innovations Ltd.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **CIVIL ACTION NO. ________** |
| | § | |
| **Fenix International Ltd.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendant.** | § | |
| | § | |

**COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND**

Plaintiffs Malikie Innovations Ltd. ("Malikie") and Key Patent Innovations Ltd. ("KPI") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this Complaint for patent infringement and damages against Defendant Fenix International Ltd. ("OnlyFans" or "Defendant") and, in support, allege the following:

**PARTIES**

1. Plaintiff Malikie is the successor-in-interest to a substantial patent portfolio created and procured over many years by BlackBerry Ltd., formerly known as Research in Motion Ltd., and its predecessor, subsidiary, and affiliated companies (collectively, "BlackBerry"). Malikie is an Irish entity duly organized and existing under the laws of Ireland. Malikie has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

2. Plaintiff KPI is the beneficiary of a trust pursuant to which Malikie owns, holds, and asserts the Asserted Patents (set forth below). KPI is an Irish entity duly organized and existing under the laws of Ireland. KPI has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

3. On information and belief, Defendant Fenix International Ltd. is a limited company registered in England and Wales, with a company registration number of 10354575, with its principal place of business at Ninth Floor, 107 Cheapside, London, United Kingdom, EC2V 6DN.

4. On information and belief, Fenix and its subsidiaries operate the social media platform OnlyFans: www.onlyfans.com. OnlyFans is a subscription platform that allows users to subscribe to content creators to view videos and photos and have one-on-one chats.

5. On information and belief, Defendant does business in Texas and in this Judicial District, directly or through subsidiaries or intermediaries, including its facilities, partners, and others.

## PATENTS IN SUIT

6. Malikie is the assignee of and owns all right and title to U.S. Patent Nos. 8,334,847 (the "'847 Patent"); 7,979,906 (the "'906 Patent"); 8,392,598 (the "'598 Patent"); and 9,210,205 (the "'205 Patent") (collectively, the "Asserted Patents").

7. The Asserted Patents were developed by inventors working for BlackBerry. BlackBerry was a pioneer in mobile device technology that has revolutionized the way the world lives and does business. BlackBerry developed numerous innovative and diverse technologies pertaining to mobile devices and related software and wireless communication technology. For example, BlackBerry invented novel messaging and streaming techniques that improve the way a mobile device can communicate with remote servers, and improve the speed and efficiency of mobile device operation. Some of BlackBerry's many groundbreaking inventions are described and claimed in certain of the Asserted Patents.

8. The ’847 Patent, entitled “System Having User Interface Using Object Selection and Gestures” was duly and lawfully issued on December 18, 2012. A true and correct copy of the ’847 Patent is attached hereto as Exhibit 1.

9. The ’906 Patent, entitled “Method and System for Multifaceted Scanning” was duly and lawfully issued on July 12, 2011. A true and correct copy of the ’906 Patent is attached hereto as Exhibit 2.

10. The ’598 Patent, entitled “Methods and Apparatus to Facilitate Client Controlled Sessionless Adaptation” was duly and lawfully issued on March 5, 2013. A true and correct copy of the ’598 Patent is attached hereto as Exhibit 3.

11. The ’205 Patent, entitled “System and Method for Providing Streaming Data to a Mobile Device,” was duly and lawfully issued on December 8, 2015. A true and correct copy of the ’205 Patent is attached hereto as Exhibit 4.

12. On February 11, 2025, Malikie sent Defendant a letter offering a license to Malikie’s patent portfolio. Malikie’s February 11th letter to Defendants specifically identified the ’847 Patent and the ’906 Patent, among others. Malikie’s February 11th letter also identified a set of exemplary products and services that Malikie believes were and are infringing these patents (on a patent-by-patent basis). Malikie’s letter specifically noted that its portfolio includes patents relating to instant messaging, gesture recognition, security, notifications, and application management and that Malikie is willing to offer Defendants a license so that it could continue its use of the patented technologies.

13. On information and belief, Defendant received Malikie’s February 11th letter by courier and email. No one from Defendant initially responded to the February 11th letter.

14. On February 24, 2025, Malikie sent Defendant another letter, once again offering a license to Malikie's patent portfolio. Malikie's February 24th letter specifically identified the '598 Patent, among others. Malikie's February 24th letter also identified a set of exemplary products and services that Malikie believes were and are infringing these patents (on a patent-by-patent basis).

15. For a period of nearly 18 months following these letters, Malikie and Defendant discussed a potential licensing arrangement. Throughout the course of those discussions, on April 10, 2026, Malikie also identified the '205 Patent, and attached a claim chart showing exemplary products and services that Malikie believes were and are infringing.

16. Because Defendant has been unwilling to agree to a license, Malikie has been left with no choice but to bring this action to enforce its rights as the owner of valid and valuable patents that Defendant is willfully infringing.

## JURISDICTION AND VENUE

17. Plaintiffs incorporate by reference paragraphs 1-16 herein.

18. This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. This is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331, 1332, and 1338(a).

19. This District has general and specific personal jurisdiction over Defendant because, directly or through intermediaries, Defendant has committed acts within this District giving rise to this action; transacts and conducts business, directly, and/or indirectly, in this District and the State of Texas; and transacts and conducts business with residents of this District and the State of Texas.

20. Defendant has infringed and continues to infringe the Asserted Patents within this District and the State of Texas by making, using, selling, licensing, offering for sale, and/or

importing in or into this District and elsewhere in the State of Texas, products and services covered by claims in the Asserted Patents, including without limitation products and services that, when made or used, practice one or more claims of the Asserted Patents. Defendant, directly and through affiliates, subsidiaries, and intermediaries, makes, uses, sells, licenses, offers for sale, imports, ships, distributes, advertises, markets, promotes, and/or otherwise commercializes such infringing products and services in or into this District and the State of Texas. Defendant regularly conducts and solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from goods and services provided to residents of this District and the State of Texas.

21. Defendant is doing business, either directly or through respective agents, on an ongoing basis in this Judicial District and elsewhere in the United States, and has committed acts of infringement in this District.

22. On information and belief, Defendant makes, uses, sells, offers to sell, and/or imports infringing products and services into and/or within this District, maintains a permanent and/or continuing presence within this District, and has the requisite minimum contacts with this District such that this venue is a fair and reasonable and convenient one. Upon information and belief, Defendant has transacted and, at the time of the filing of the Complaint, is continuing to transact business within this District. According to public reporting, Texas was OnlyFans' second largest State by revenue, with residents spending nearly $250 million on the OnlyFans platform in 2025. https://www.audacy.com/krld/news/state/texans-spent-nearly-usd250-million-on-onlyfans.

23. Defendant purposefully directs or controls the sale and use of the accused products and services online, including in Texas and elsewhere in the United States, and expects and intends that the accused products and services will be so used in this District. Defendant purposefully places the accused products and services—whether by itself or through subsidiaries, affiliates, or

third parties—into a supply chain, knowing that the accused products and services will be sold and used in the United States, including Texas and in this District. Therefore, Defendant also facilitates the use of the accused products and services in Texas.

24. Defendant utilizes established distribution channels to distribute, market, offer for sale, sell, service, and warrant infringing products and services directly to consumers and other users in the U.S., including providing links via its website and through advertisements to its products and services. Such a presence furthers the development, design, manufacture, importation, distribution, sale, and use (including by inducement) of infringing accused products and services in Texas, including in this District.

25. This Court has personal jurisdiction over Defendant pursuant to Tex. Civ. Prac. & Rem. Code §§ 17.041, 17.042, et seq., the Texas Long Arm Statute.

26. Venue is proper in this District under 28 U.S.C. § 1391(b)-(c) because, among other things, Defendant is a foreign corporation defendant not resident in the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018).

27. Defendant is doing business, either directly or through respective agents, subsidiaries, or intermediaries, on an ongoing basis in this District and elsewhere in the United States and have committed acts of infringement in this District.

28. Defendant is subject to this Court's jurisdiction pursuant to due process and the Texas Long Arm Statute due at least to its substantial business activities in this State and District, including (a) its past and present infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods or services, including software, provided to customers in Texas.

## FIRST CLAIM

**(Infringement of the ’847 Patent)**

29. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-28 of their Complaint.

30. The claims of the ’847 Patent are directed to non-abstract ideas and otherwise recite inventive concepts and technological improvements.

31. The problem BlackBerry solved with the ’847 Patent was the growing complexity of the virtual interface. The virtual interface included a number of controls and/or images which resulted in a crowded display. “Display crowding may make it difficult for the user to select displayed objects associated with these functions due to their close proximity with one another.” ’847 Patent, 1:38-41.

32. The ’847 Patent is generally directed to systems and methods for providing a user interface for controlling a display using an interface application to provide, in a multilayer display arrangement, a container with interface controls that are selectable based on the magnitude of the motion or manipulation of the display.

33. Defendant has been on notice of the ’847 Patent and a specific factual basis for its infringement of the ’847 Patent since at least February 11, 2025.

34. On information and belief, Defendant did not take any action to stop its infringement of the ’847 Patent after February 11, 2025.

35. Defendant has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 14 of the ’847 Patent, by having made, used, tested, sold, offered for sale, and/or imported hardware and/or software including detecting whether the touch or the

contact is in an active area of one of the selectable objects when the comparison indicates that the magnitude of the movement of the touch or the contact is below the threshold value; and executing a function associated with a selection of the one of the selectable objects. An exemplary claim chart concerning one way in which Defendant infringes claim 14 of the '847 Patent is attached as Exhibit 5.

36. Defendant has also indirectly infringed, and continues to indirectly infringe, the '847 Patent under 35 U.S.C. § 271(b) and (c).

37. Defendant has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 14 of the '847 Patent under 35 U.S.C. § 271(b), and continues to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 5.

38. Defendant has also contributed to the direct infringement of at least claim 14 of the '847 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '847 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendant provides, owns, operates, sells, offers to sell, and/or imports products or software including detecting whether the touch or the contact is in an active area of one of the selectable objects when the comparison indicates that the magnitude of the movement of the touch or the contact is below the threshold value; and executing a function associated with a selection of the one of the selectable objects (such as that shown in Exhibit 5) that are not a staple article of commerce and are incapable of substantial noninfringing use.

39. Defendant's infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## SECOND CLAIM

**(Infringement of the ’906 Patent)**

40. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-39 of their Complaint.

41. The claims of the ’906 Patent are directed to non-abstract ideas and otherwise recite inventive concepts and technological improvements.

42. The problem BlackBerry solved with the ’906 Patent was that data scanning at the time of the invention was limited to one type of scanning and typically performed on a specific data stream or file. Prior to the ’906 Patent, different products performed data scanning for different reasons. For example, one scanning solution was used for virus scanning, another scanning solution scanned for inappropriate content based on user pre-selected criteria and rating placed on a web site, e.g., filtering content that created fear, depicted drug or alcohol use, showed sexuality or nudity, among others. ’906 Patent, 1:12-26.

43. The ’906 Patent is generally directed to systems and methods that provide for multifaceted scanning on various data streams utilizing a plurality of scanning aspects in a wireless environment.

44. Defendant has been on notice of the ’906 Patent and a specific factual basis for its infringement of the ’906 Patent since at least February 11, 2025.

45. On information and belief, Defendant did not take any action to stop its infringement of the ’906 Patent after February 11, 2025.

46. Defendant has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claims 13 and 14 of the ’906 Patent, by having made, used, tested, sold,

offered for sale, and/or imported hardware and/or software including providing multifaceted scanning on various data streams utilizing a plurality of scanning aspects in a wireless environment. An exemplary claim chart concerning one way in which Defendant infringes claims 13 and 14 of the '906 Patent is attached as Exhibit 6.

47. Defendant has also indirectly infringed, and continues to indirectly infringe, the '906 Patent under 35 U.S.C. § 271(b) and (c).

48. Defendant has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claims 13 and 14 of the '906 Patent under 35 U.S.C. § 271(b), and continues to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 6.

49. Defendant has also contributed to the direct infringement of at least claims 13 and 14 of the '906 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '906 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendant provides, owns, operates, sells, offers to sell, and/or imports products or software including providing multifaceted scanning on various data streams utilizing a plurality of scanning aspects in a wireless environment (such as that shown in Exhibit 6) that are not a staple article of commerce and are incapable of substantial noninfringing use.

50. Defendant's infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## THIRD CLAIM

### (Infringement of the '598 Patent)

51. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-50 of their Complaint.

52. The claims of the ’598 Patent are directed to non-abstract ideas and otherwise recite inventive concepts and technological improvements.

53. The problem BlackBerry solved with the ’598 Patent was allowing devices to select encoded media configurations that are most appropriate for a respective device. Particularly, content providers may encode media in different configurations, including different bit rate(s), resolution(s), sizes, etc. The ’598 Patent allows for devices to request media segments having a given encoding. This allows a device to stream media based on the current conditions of the device.

54. The ’598 Patent is generally directed to delivering and streaming media content via hypertext transfer protocol based on requests of portions of media.

55. Defendant has been on notice of the ’598 Patent and a specific factual basis for its infringement of the ’598 Patent since at least February 24, 2025.

56. On information and belief, Defendant did not take any action to stop its infringement of the ’598 Patent after February 24, 2025.

57. Defendant has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the ’598 Patent, by having made, used, tested, sold, offered for sale, and/or imported hardware and/or software that delivers or streams media content via hypertext transfer protocol based on requests of portions of media, such as Defendant’s platform’s video streaming service. An exemplary claim chart concerning one way in which Defendant infringes claim 1 of the ’598 Patent is attached as Exhibit 7.

58. Defendant has also indirectly infringed, and continues to indirectly infringe, the ’598 Patent under 35 U.S.C. § 271(b) and (c).

59. Defendant has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the ’598 Patent under 35 U.S.C. § 271(b), and continues to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 7.

60. Defendant has also contributed to the direct infringement of at least claim 1 of the ’598 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the ’598 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendant provides, owns, operates, sells, offers to sell, and/or imports products or software including providing for delivering or streaming media content via hypertext transfer protocol based on requests of portions of media (such as that shown in Exhibit 7) that are not a staple article of commerce and are incapable of substantial noninfringing use.

61. Defendant’s infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## **FOURTH CLAIM**

### **(Infringement of the ’205 Patent)**

62. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-61 of their Complaint.

63. The claims of the ’205 Patent are directed to non-abstract ideas and otherwise recite inventive concepts and technological improvements.

64. The problem BlackBerry solved with the '205 Patent was that as mobile devices were becoming popular, more and more content was being delivered to them involving intense data transmission. The patent recognizes that there were generally two methods of data transmission: streaming, which required watching streamed data immediately, and pod casting, which delivered a complete set of content to be later played and replayed. *See* 1:34-44. Both types of transmission had drawbacks however, because they did not give the user the option to customize the format the data was sent and required specialized reader software to view data in different formats—all of which reduces mobile device performance. *Id.* 1:45-56. The invention addresses these shortcomings by introducing architecture allowing streaming content to be received, reformatted according to specific settings, and controlled based on those settings, all in order to improve the functioning of data delivery systems and mobile device communications.

65. The '205 Patent is generally directed to a system and method for providing streaming data to a mobile device.

66. Defendant has been on notice of the '205 Patent and a specific factual basis for its infringement of the '205 Patent since at least April 10, 2026.

67. On information and belief, Defendant did not take any action to stop its infringement of the '205 Patent.

68. Defendant has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '205 Patent, by having made, used, tested, sold, offered for sale, and/or imported hardware and/or software that provides streaming data, such as Defendant's platform's video streaming service. An exemplary claim chart concerning one way in which Defendant infringes claim 1 of the '205 Patent is attached as Exhibit 8A-8B.

69. Defendant has also indirectly infringed, and continues to indirectly infringe, the ’205 Patent under 35 U.S.C. § 271(b) and (c).

70. Defendant has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the ’205 Patent under 35 U.S.C. § 271(b), and continues to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 8A-8B.

71. Defendant has also contributed to the direct infringement of at least claim 1 of the ’205 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the ’205 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendant provides, owns, operates, sells, offers to sell, and/or imports products or software that provides streaming data (such as that shown in Exhibit 8A-8B) that are not a staple article of commerce and are incapable of substantial noninfringing use.

72. Defendant’s infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## PRAYER FOR RELIEF

WHEREFORE, Malikie and KPI pray for judgment against Defendant as follows:

73. That Defendant has infringed each of the Asserted Patents, and unless enjoined, will continue to infringe the Asserted Patents;

74. That Defendant’s infringement of the Asserted Patents has been willful;

75. That Defendant pay Malikie and KPI damages adequate to compensate for its past infringement of the Asserted Patents, and present and future infringement of the Asserted Patents,

together with interest and costs and in no event less than a reasonably royalty under 35 U.S.C. § 284;

76. That Defendant pays prejudgment and post-judgment interest on the damages assessed;

77. That Defendant pays Malikie and KPI enhanced damages pursuant to 35 U.S.C. § 284;

78. That Defendant be ordered to pay ongoing royalties to Malikie and KPI for any post-judgment infringement of the applicable Asserted Patents;

79. That this is an exceptional case under 35 U.S.C. § 285; and that Defendant pay Malikie and KPI's attorneys' fees and costs in this action; and

80. That Malikie and KPI be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Malikie and KPI hereby demand a trial by jury on all issues triable to a jury.

Respectfully submitted,

*/s/ Khue Hoang by permission Claire Abernathy Henry*

Khue Hoang
Patrick Colsher
**Reichman Jorgensen Lehman & Feldberg LLP**
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
pcolsher@reichmanjorgensen.com
khoang@reichmanjorgensen.com

Matthew Berkowitz

**Reichman Jorgensen Lehman & Feldberg LLP**
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
(650) 623-1401
mberkowitz@reichmanjorgensen.com

Connor S. Houghton
Naveed Hasan
**Reichman Jorgensen Lehman & Feldberg LLP**
1909 K Street N.W., Suite 800
Washington, DC 20006
(650) 623-1401
choughton@reichmanjorgensen.com
nhasan@reichmanjorgensen.com

Of Counsel:

Claire Abernathy Henry
Texas State Bar No. 24053063
MILLER FAIR HENRY PLLC
1507 Bill Owens Pkwy. Longview, TX 75604
Tel: (903) 757-6400
claire@millerfairhenry.com

*Attorneys for Plaintiffs Malikie Innovations Ltd. and Key Patent Innovations Ltd.*